**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
SHELDON BATTLES,                          )
                                          )
                 Plaintiff,               )
                                          )
          v.                              )
                                          ) Civil Action No. 16-1655 (EGS)
WASHINGTON METROPOLITAN AREA              )
TRANSIT AUTHORITY, SUMMON                 )
CANNON and DEVIN WALKER                   )
                                          )
                 Defendants.              )
_____)

## MEMORANDUM OPINION

Plaintiff Sheldon Battles, proceeding *pro se*, has sued
defendants Washington Metropolitan Area Transit Authority
("WMATA") and two of its employees – Summon Cannon and Devin
Walker (together, "Individual Defendants") – for breach of
contract, wrongful termination in violation of public policy,
defamation, intentional infliction of emotional distress, and
negligent infliction of emotional distress. Before the Court are
defendants' motions to dismiss the complaint under Federal Rules
of Civil Procedure 12(b)(1) and 12(b)(6). After careful
consideration of the complaint, the memoranda filed by the
parties, and the applicable case law, the Court grants in part
and denies in part WMATA's motion to dismiss, and grants the
Individual Defendants' motion to dismiss.

## I.    FACTUAL BACKGROUND

Mr. Battles, a Maryland resident, worked for WMATA from January 1997 until his termination on November 27, 2015. Compl. ¶ 8. Originally hired as a bus operator, Mr. Battles earned a series of promotions between 2007 and 2015, eventually holding the position of Assistant Superintendent at the West Ox Division. *Id.*

The facts that eventually led to Mr. Battles' termination and this subsequent lawsuit arise out of an approximately two-month long consensual sexual relationship between Mr. Battles and a subordinate female employee. *Id.* ¶ 9. The relationship began in May 2015, while the employee was on leave. *Id.* ¶¶ 9-10. By the time the employee returned to work on July 23, 2015, "the relationship between the Plaintiff and the subordinate employee had ceased." *Id.* ¶ 11.

Shortly after returning to work, the employee "began exhibiting attendance issues." *Id.* ¶ 12. As her supervisor, Mr. Battles disciplined the employee about these issues on October 1, 2015. *Id.* ¶ 13. That same day, the employee filed a complaint with WMATA accusing Mr. Battles of sexual harassment. *Id.* ¶ 14. Defendant Devin Walker, an investigator in WMATA's Office of Civil Rights, launched an investigation into the employee's sexual-harassment allegations. *Id.* ¶¶ 15, 20. In the course of the investigation, the employee "admit[ted] that her involvement

in the sexual relationship was [] consensual." *Id.* ¶ 17. At the
conclusion of the investigation, WMATA "found no probabl[e]
cause for sexual harassment" and the Office of Civil Rights
issued a determination letter finding that Mr. Battles had not
"violate[d] any Title VII laws or policies." *Id.* ¶¶ 15, 18.
Despite finding in favor of Mr. Battles on the sexual-harassment
allegations, Mr. Walker determined that Mr. Battles had violated
WMATA's nepotism/favoritism policy. *Id.* ¶¶ 20-21. As a result,
defendant Summon Cannon, the Superintendent, fired Mr. Battles
from his position on November 27, 2015. *Id.* ¶ 22.

Mr. Battles claims that WMATA's stated reasons for
terminating his employment are "false and pretextual." *Id.* ¶ 8.
According to Mr. Battles, WMATA fired him "in retaliation for
his numerous complaints and reports regarding events and
practices that created an unsafe work environment for him and
create[d] conditions that undermined his ability to effectively
supervise his subordinates." *Id.* In particular, Mr. Battles
asserts that he was terminated as a result of his "complaints to
administrators about the disparate treatment his female
subordinates received after falsely accusing him of
inappropriate behavior" – e.g., "the female subordinate that
made the false allegations was not even disciplined." *Id.*

Based on these allegations, Mr. Battles asserts five causes
of action: (1) wrongful termination (breach of contract), *id.* ¶¶

26-31; (2) wrongful termination (public policy violation), *id.* ¶¶ 32-37; (3) defamation, *id.* ¶¶ 38-51; (4) intentional infliction of emotional distress, *id.* ¶¶ 52-55; and (5) negligent infliction of emotional distress, *id.* ¶¶ 56-57. These causes of actions are asserted against both WMATA and the Individual Defendants. Mr. Battles seeks "lost past and future wages" in an amount to be determined. *Id.* Prayer ¶ 3. He also requests damages for "loss of employability, mental pain and anguish and emotional distress." *Id.* Prayer ¶ 1. Finally, he seeks punitive damages and costs available under any applicable statutory provision. *Id.* Prayer ¶¶ 2, 4-9.

WMATA and the Individual Defendants filed the instant motions to dismiss on September 9 and 16, 2016, respectively, arguing that they are entitled to dismissal on the basis of sovereign immunity and because Mr. Battles fails to plausibly allege his claims. *See* WMATA Mem. in Supp. of Mot. to Dismiss ("WMATA Mem."), ECF No. 3; Individual Defs.' Mem. in Supp. of Mot. to Dismiss ("Individual Defs.' Mem."), ECF No. 4. Mr. Battles timely opposed WMATA's motion to dismiss, and that motion was fully ripe on September 28, 2016. *See* Pl.'s Mem. in Opp. to WMATA's Mot. to Dismiss ("Pl.'s Opp."), ECF No. 5; WMATA's Reply in Supp. of Mot. to Dismiss ("WMATA's Reply"), ECF No. 6. Instead of opposing the Individual Defendants' motion to dismiss, Mr. Battles moved to strike that motion as untimely

filed and for failure to provide accurate information on the certificate of service. *See* Pl.'s Mot. to Strike, ECF No. 7. The Court declined to strike the Individual Defendants' motion, but it warned defendants that failure to provide accurate information could lead to the imposition of sanctions. *See* Minute Order (Apr. 4, 2017). The Court further directed Mr. Battles to file his opposition to the Individual Defendants' motion by no later than April 21, 2017. *Id.* Despite this Order, Mr. Battles did not file any opposition to the Individual Defendants' motion. Instead, on April 24, 2017, without seeking leave of the Court, Mr. Battles filed a First Amended Complaint. *See* Am. Compl., ECF No. 19. On May 8, 2017, WMATA and the Individual Defendants moved to dismiss that complaint. *See* WMATA's Mot. to Dismiss Pl.'s Am. Compl., ECF No. 22; Individual Defs.' Mot. to Dismiss Pl.'s Am. Compl., ECF No. 21. To date, Mr. Battles has not responded to either motion.

## II.  STANDARD OF REVIEW

### A. Rule 12(b)(1) – Subject-Matter Jurisdiction

"A federal district court may only hear a claim over which [it] has subject-matter jurisdiction; therefore, a Rule 12(b)(1) motion for dismissal is a threshold challenge to a court's jurisdiction." *Gregorio v. Hoover*, 238 F. Supp. 3d 37 (D.D.C. 2017) (citation and internal quotation marks omitted). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden

of establishing that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, "the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because "[o]nce a court determines that it lacks subject

matter jurisdiction, it can proceed no further." *Ctr. for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (citations and internal quotation marks omitted).

## B. Rule 12(b)(6) – Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A "*pro se* complaint is entitled to liberal construction." *Washington v. Geren*, 675 F. Supp. 2d 26, 31 (D.D.C. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Even so, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Amended Complaint

The Court first addresses the propriety of Mr. Battles' First Amended Complaint, which was filed on April 24, 2017. *See* Am. Compl., ECF No. 19.

Federal Rule of Civil Procedure 15 sets forth the circumstances and procedures for amending pleadings. Under that rule, a plaintiff may amend his complaint once "as a matter of course" within 21 days of serving it or within 21 days of the filing of a responsive pleading or certain Rule 12 motions. *See*

Fed. R. Civ. P. 15(a)(1). Otherwise, he must seek consent of the defendant or leave from the court. *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* Importantly, Rule 15(a) – and its direction to courts to freely allow amendment of complaints – "applies only when the plaintiff actually has moved for leave to amend the complaint." *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006). Absent such a motion, "there is nothing 'to be freely given.'" *Id.*

Here, Mr. Battles served his initial complaint on WMATA on August 19, 2016. *See* Return of Service Affidavit, ECF No. 2. Mr. Battles served the Individual Defendants a week later on August 25 and 26, 2016. *See id.* Defendants filed their Rule 12(b)(6) motions in September 2016. *See* WMATA Mot. to Dismiss, ECF No. 3 (filed Sept. 9, 2016); Individual Defs.' Mot. to Dismiss, ECF No. 4 (filed Sept. 16, 2016). As such, there can be no question that Mr. Battles First Amended Complaint – which was filed on April 24, 2017, approximately seven months after defendants' moved to dismiss the initial complaint – was filed long after the period for amendment "as a matter of course" had passed.

As a result, Mr. Battles was required to obtain defendants' written consent or seek leave of the court prior to filing his First Amended Complaint. He did neither. *See, e.g.*, WMATA's Mem. in Supp. Mot. to Dismiss Am. Compl. at 3, ECF No. 22 ("Not only

has Plaintiff failed to seek consent for filing his Amended Complaint, he has also failed to seek leave from the Court."). Accordingly, the Court strikes the First Amended Complaint from the record. *See, e.g.*, *Pinson v. U.S. Dep't of Justice*, 975 F. Supp. 2d 20, 28 (D.D.C. 2013) (striking *pro se* plaintiff's second amended complaint where plaintiff failed to seek leave before filing the complaint); *cf. Alston v. Flagstar Bank, FSB*, 609 F. App'x 2, 4 (D.C. Cir. 2015) (because plaintiff "did not follow the court's rules governing amendments, it could hardly have been an abuse of discretion for the district court to deny leave to amend") (citation and internal quotation marks omitted).[1]

### B. Mr. Battles' Claims Against WMATA

#### (1) Mr. Battles' Breach-of-Contract Claim Cannot Be Resolved on a Motion to Dismiss.

In his first count, Mr. Battles alleges that WMATA breached an "oral and implied contract" with him by "terminating [him]

---

[1]   The Court notes that the only new allegations in the First Amended Complaint appear to relate to Mr. Battles' exhaustion of administrative remedies. Even if Mr. Battles had alleged a claim under Title VII or some other statutory or other scheme requiring administrative exhaustion prior to filing suit, "[a] plaintiff need not plead exhaustion in his complaint" because "[f]ailure to exhaust administrative remedies is an affirmative defense." *Moore v. D.C.*, 445 Fed. Appx. 365, 366 (D.C. Cir. 2011). Accordingly, nothing in the First Amended Complaint would alter the Court's analysis with respect to Mr. Battles' claims at this stage in the litigation.

for false, pretextual and defamatory reasons in retaliation for his reports and complaints of disparate treatment." Compl. ¶¶ 27-29.

In its motion, WMATA initially argued that Mr. Battles' breach-of-contract claim failed because Mr. Battles' position as an Assistant Superintendent for Bus Service Operations was considered "middle management." WMATA Mem. at 3. According to WMATA, under its policy, middle managers are "at-will" employees who can be discharged "at any time and for any reason, or for no reason at all." Mem. at 3 (citing *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991)).

In his opposition, Mr. Battles asserts that "his employment with [WMATA] is not at will." Pl.'s Opp. at 3. He further cites *Lance v. United Mine Workers of Am. 1974 Pension Tr.*, 355 F. Supp. 2d 358, 360 (D.D.C. 2005), for the proposition that "an employee handbook or other policy statement" can create an enforceable contractual right in certain circumstances. Pl.'s Opp. at 3. Mr. Battles states that, in this instance, an "Employee Dispute Resolution" policy "create[d] an enforceable right to the particular disciplinary procedures described therein." *Id.* at 4.

WMATA now appears to concede that Mr. Battles was not a middle-management employee at the time of his termination. *See* WMATA's Reply at 1 ("Plaintiff is correct that he was terminated

from his position as an Assistant Superintendent . . . which at the time was considered a LS-10 position."). Instead, it now argues that Mr. Battles' reliance on the employee dispute resolution policy "backfires" because the policy specifically excepts cases like that of Mr. Battles from the procedures it sets forth. *Id*. at 1-2. WMATA further adds that, even if the policy does apply, Mr. Battles' claim still fails because he failed to "plead that he exhausted his administrative remedy first before filing suit." *Id*. at 2.

The Court  addresses WMATA's second argument first. The Federal Rules of Civil Procedure "do not require a plaintiff to anticipate affirmative defenses which might be raised by a defendant." *Chem-Met Co. v. Metaland Int'l, Inc*., No. CIV. A. 96-2548(TAF), 1997 WL 74541, at *2 (D.D.C. Feb. 19, 1997). Indeed, "the practice of pleading facts in a complaint to defeat anticipated affirmative defenses is disfavored." *Id.* Consistent with this principle, the D.C. Circuit has made clear that "[a] plaintiff need not plead exhaustion in his complaint" because "[f]ailure to exhaust administrative remedies is an affirmative defense." *Moore v. D.C.*, 445 Fed. Appx. 365, 366 (D.C. Cir. 2011).

Moreover, the Court declines to convert WMATA's motion to dismiss into one for summary judgment because WMATA itself has not provided any proof to support its contention that Mr.

Battles failed to employ the dispute-resolution procedures outlined in the policy. Instead, WMATA cursorily asserts that Mr. Battles' "failure to exhaust [his] administrative rights warrants dismissal of his Complaint." WMATA Reply at 2. This is insufficient. *See Drewrey v. Clinton*, 763 F. Supp. 2d 54, 61 (D.D.C. 2011) ("Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden."). Accordingly, the Court will not dismiss Mr. Battles' complaint on this ground. *See, e.g.*, *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011)(because plaintiffs "were free to omit exhaustion from their pleadings," summary judgment would be the appropriate stage to ascertain plaintiffs' efforts toward exhaustion); *Tapp v. Washington Metro. Area Transit Auth.*, No. 15-CV-0768, 2016 WL 7441719, at *11 (D.D.C. Sept. 30, 2016) ("because [plaintiff]'s amended complaint does not allege any facts that relate to the affirmative defense of non-exhaustion, this Court cannot conclude, as a matter of law, that plaintiff cannot prove any set of facts entitling him to relief") (citation and internal quotation marks omitted).

WMATA's other argument – that the dispute-resolution procedures set out in the policy specifically exclude cases like those of Mr. Battles' from their purview – fares no better. WMATA claims that sexual-harassment complaints "are not eligible

13

for review" under the dispute-resolution policy. WMATA Reply at 1. According to WMATA, Mr. Battles' termination due to his alleged failure to comply with the favoritism/nepotism policy was "directly related" to an investigation of sexual harassment – and therefore, Mr. Battles had no "right[]" to have his dispute resolved pursuant to the policy. *Id.* at 1-2.

At this stage in the litigation, during which the Court must draw all inferences in favor of Mr. Battles, the Court declines to find that Mr. Battles' termination was "directly related" to the investigation into the sexual-harassment allegations lodged against him. *See Martin v. Washington Metro. Area Transit Auth.*, 273 F. Supp. 2d 114, 117 (D.D.C. 2003) (refusing to dismiss breach of implied contract claim "without the benefit of affidavits" or other evidence). Although WMATA may well be right that Mr. Battles has no enforceable contract rights, the Court does not have sufficient evidence to make that determination at this juncture. Accordingly, the Court will not dismiss Mr. Battles' breach-of-contract claim against WMATA.

### (2) Mr. Battles' Common-Law Tort Claims Are Barred By WMATA's Sovereign Immunity.

Mr. Battles also seeks to maintain tort claims for wrongful termination in violation of public policy,[2] defamation,

---

[2]    Although an employer can generally discharge an at-will employee at any time, D.C. law recognizes an exception to this rule in the intentional tort for wrongful discharge. *See Herron*

14

intentional infliction of emotional distress, and negligent
infliction of emotional distress against WMATA. WMATA argues
that all of Mr. Battles' tort claims must be dismissed because
"WMATA enjoys sovereign immunity for torts committed in the
performance of its discretionary decision to terminate the
Plaintiff from his employment." WMATA Mem. at 3-4.

The Eleventh Amendment affords each state immunity from
suits brought against it in federal court. *Morris v. Washington
Metro. Area Transit Auth.*, 781 F.2d 218, 222–23 (D.C. Cir.
1986). Although "the immunity is one of the state, some agencies
exercising state power have been permitted to invoke the
Amendment in order to protect the state treasury from liability
that would have had essentially the same practical consequences
as a judgment against the State itself." *Morris v. Washington
Metro. Area Transit Auth.*, 781 F.2d 218, 223 (D.C. Cir. 1986)
(citation and internal quotation marks omitted). WMATA was
created by a compact enacted by Congress to which the
Commonwealth of Virginia, the State of Maryland, and the
District of Columbia are signatories. *Jones v. Washington Metro.*

---

*v. Fannie Mae*, No. CV 10-943 (RMC), 2016 WL 1177918, at *16
(D.D.C. Mar. 8, 2016). Under this exception, "there is a cause
of action for wrongful termination where an at-will employee
acted in furtherance of a public policy and was terminated
solely on the basis of such conduct." *Id.* (citation and internal
quotation marks omitted).

*Area Transit Auth.*, 205 F.3d 428, 432 (D.C. Cir. 2000). The D.C.
Circuit has "consistently recognized that in signing the WMATA
Compact, Virginia and Maryland each conferred its immunity upon
WMATA." *Id.*

Section 80 of the WMATA Compact includes a limited waiver
of immunity for tort claims "committed in the conduct of any
proprietary function" but not for "any torts occurring in the
performance of a governmental function." D.C. Code § 9-
1107.01(80). "Because it is difficult to distinguish between
public and private sector functions with any precision," a court
instead asks "whether the claim seeks to impose liability for
conduct that is discretionary, in which case the claim is barred
by immunity, or ministerial, in which case the claim may
proceed." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138
(D.C. Cir. 2015). "Discretionary duties generally involve
judgment, planning, or policy decisions and are immunized as
reflecting sovereign choices." *Id.* (citation and internal
quotation marks omitted). Ministerial duties, on the other hand,
"involve enforcement or administration of a mandatory duty at
the *operational* level," and are not immunized. *Id.*

To determine whether a WMATA activity is discretionary –
and therefore shielded by sovereign immunity – the court must
apply a two-part test. *See KiSKA Const. Corp. v. Washington
Metro. Area Transit Auth.*, 321 F.3d 1151, 1159 (D.C. Cir. 2003).

First, the court must determine "whether any statute, regulation, or policy prescribes a course of action for [the decisionmaker] follow." *Id.* (citation and internal quotation marks omitted). If so, sovereign immunity does not apply. If the governing statutes or regulations leave room for the exercise of discretion – or if there is no governing regulation prescribing a course of conduct at all – then the court must ask whether the decisionmaker's "exercise of discretion is grounded in social, economic, or political goals." *Id.* If the answer to that question is affirmative, then the decision at issue is "susceptible to policy judgement" and thus fits "within section 80's retention of sovereign immunity." *Id.*

Here, WMATA's decision to terminate Mr. Battles' employment was an exercise of discretion and therefore shielded from liability by WMATA's sovereign immunity. As the D.C. Circuit has explained, "[a]lthough employment decisions are not quintessential governmental functions – after all, private entities also hire and fire employees – [] decisions concerning the hiring, training and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (citation and internal quotation marks omitted). This is because the Compact "confers broad powers on WMATA to . . . provide for the qualification, appointment, [and]

removal" of its employees. *Id.* Mr. Battles' tort allegations

arise out of an internal investigation conducted by WMATA

through which it determined that Mr. Battles had violated work

policies related to favoritism. Mr. Battles has not pointed to

any "statute, regulation, or policy" that prescribes WMATA's

decision. To the contrary, this type of employment decision

inherently involves an "exercise of discretion . . . grounded in

social, economic, or political goals," "including budgetary

constraints, public perception, economic conditions, individual

backgrounds, office diversity, experience and employer

intuition." *Beebe*, 129 F.3d at 1287-88 (citation and internal

quotation marks omitted).

In his opposition, Mr. Battles attempts to avoid immunity

by pointing to the Civil Rights Remedies Equalization Act. Pl.'s

Opp. at 5. That statue provides that

> [a] state shall not be immune under the Eleventh
> Amendment of the Constitution of the United States
> from suit in Federal court for a violation of section
> 504 of the Rehabilitation Act of 1973, title IX of the
> Education Amendments of 1972, the Age Discrimination
> Act of 1975, title VI of the Civil Rights Act of 1964,
> or the provisions of any other Federal statute
> prohibiting discrimination by recipients of Federal
> financial assistance.

42 U.S.C. § 2000d-7(a)(1) (2006).

Although it is not wholly clear what argument Mr. Battles

intends to advance, a liberal reading of his opposition suggests

that Mr. Battles believes that Congress intended to waive

WMATA's immunity from claims for discrimination and retaliation through section 2000d-7. But Mr. Battles has not alleged any federal causes of action, much less a cause of action under a "Federal statute prohibiting discrimination by recipients of Federal financial assistance." *See* Compl ¶¶ 32-57 (alleging claims for wrongful termination, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress). Mr. Battles points to no authority, and the Court has found none, that suggests WMATA has waived its immunity from state-law tort claims in federal court through section 2000d-7.

In short, WMATA is shielded from liability for Mr. Battles' tort claims stemming from WMATA's decision to terminate Mr. Battles' employment. *See, e.g.*, *Tapp*, 2016 WL 7441719, at *9 ("any tortious conduct that WMATA may have committed here is immune from suit because such torts arose out of WMATA's administration of its personnel system and property, and its decision in this regard was made pursuant to the exercise of its discretion") (citation and internal quotation marks omitted); *Malloy v. Washington Metro. Area Transit Auth.*, 187 F. Supp. 3d 34, 45 (D.D.C. 2016) ("WMATA's actions in suspending and removing Malloy from his position . . . are immune for suit in tort."); *Headen v. Washington Metro. Area Transit Auth.*, 741 F. Supp. 2d 289, 295-96 (D.D.C. 2010) (dismissing plaintiff's

claims for defamation, wrongful termination, and intentional infliction of emotional distress because "WMATA is not liable for torts concerning personnel decisions").

### C. Mr. Battles' Claims Against The Individual Defendants

Mr. Battles also asserts his contract and tort claims against Summon Cannon, the superintendent who fired him, and Devin Walker, the WMATA employee who conducted the investigation into the sexual-harassment claim lodged against him. Mr. Cannon and Mr. Walker argue that they are immune from all of Mr. Battles' claims pursuant to the interstate compact creating WMATA. Ind. Defs.' Mem. at 2-4. Section 80 of the Compact provides, in relevant part:

> The **Authority shall be liable** for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function . . . . The **exclusive remedy for such breach of contracts and torts** for which the Authority shall be liable, as herein provided, **shall be by suit against the Authority**.

D.C. Code Ann. § 9-1107.01(80) (emphases added). "In other words, for torts committed in the course of proprietary or ministerial functions, WMATA is liable and its employees immune." *Beebe*, 129 F.3d at 1288.

Mr. Cannon and Mr. Walker assert that section 80 "makes WMATA the exclusive defendant for any contractual claims," requiring dismissal of Mr. Battles' breach-of-contract claim.

Individual Defs.' Mem. at 2-3. Mr. Cannon and Mr. Walker further argue that section 80 precludes any tort liability as well because they were acting within the scope of their official duties and because "[t]orts arising out of personnel decisions are discretionary decisions shielded by WMATA's sovereign immunity." *Id.* at 3.

Despite being directed to file his opposition to the Individual Defendants' motion to dismiss by April 21, 2017, *see* April 4, 2017 Minute Order, Mr. Battles failed to do so and accordingly offers no response to this argument. In his complaint, Mr. Battles does not allege that Mr. Cannon or Mr. Walker acted outside the scope of their official duties. To the contrary, Mr. Battles' scant particularized allegations against these defendants indicate that both defendants were acting well within the scope of their official duties. *See* Compl. ¶¶ 15-21 (describing Mr. Walker's involvement in the EEOC investigation of the sexual-harassment claim filed against Mr. Battles); *id.* ¶ 22 ("[A]s a result of [Mr. Walker's] erroneous finding [that Plaintiff violated WMATA's nepotism/favoritism policy], Superintendent Summon Cannon did, on November 27, 2015, terminate Plaintiff from his position[.]").

Because Mr. Cannon and Mr. Walker were acting within the scope of their official duties, and because this Court has already found that they were engaged in discretionary functions,

*see supra* Part III.B.2, Mr. Cannon and Mr. Walker are immune from suit. Therefore, all of Mr. Battles' claims against them must be dismissed.

## IV. Conclusion

For the reasons explained above, WMATA's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Specifically, WMATA is immune from liability from Mr. Battles' tort claims, and therefore Counts II, III, IV, and V against WMATA are dismissed with prejudice. Mr. Battles' breach-of-contract claim – Count I – survives WMATA's motion to dismiss. The Individual Defendants are immune from liability from all of Mr. Battles' claims, and therefore Counts I, II, III, IV, and V against Mr. Cannon and Mr. Walker are dismissed with prejudice. WMATA and the Individual Defendants' motions to dismiss Mr. Battles' amended complaint are **DENIED** as moot. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
          **United States District Judge**
          **September 28, 2017**